## In re SCOTT PAPER COMPANY SECURITIES LITIGATION.

This Document Relates to:
· ALL ACTIONS.

Civ. A. No. 90–6192.

United States District Court,
E.D. Pennsylvania.

May 29, 1992.

Robert P. Frutkin, Berger & Montague, Gerald J. Rodos, Barrack, Rodos & Bacine, Stuart H. Savett, Savett, Frutkin, Podell & Ryan, Philadelphia, Pa., Denise Davis Schwartzman, Greenfield and Chimicles, Haverford, Pa., for plaintiff.

Donald A. Scott, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant.

## MEMORANDUM

BARTLE, District Judge.

This action is a consolidation of five cases brought by shareholders as class actions against Scott Paper Company ("Scott") and two of Scott's senior executives, defendants Philip Lippincott ("Lippincott") and Ashok Bakhru ("Bakhru").[1] Defendant Scott is a Pennsylvania corporation whose principal products and activities are manufacturing consumer and commercial paper products, as well as processing pulp logs and lumber, and operating forest lands.

Plaintiffs allege violations of Sections 10(b) and 20 of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78j and 78t and of Rule 10b–5 promulgated thereunder by the Securities Exchange Commission ("SEC"), 17 C.F.R. 240.10b–5 (Count 1). Plaintiffs also allege common law negligent misrepresentation under Pennsylva-

---

1. During the relevant time periods, Philip Lippincott was the Chairman of the Board of Directors and Chief Executive Officer of Scott and Ashok Bakhru was its Senior Vice President and Chief Financial Officer.

nia law (Count III).[2] It is plaintiffs' contention that, throughout the Class Period, defendants made a series of public misrepresentations and omissions about Scott, particularly Scott's operations, financial condition and future business prospects. According to plaintiffs, these alleged misrepresentations and omissions created a distorted and misleadingly optimistic picture of Scott's growth and profitability, resulting in an artificially inflated price for Scott stock.

Before the Court is the Motion of plaintiffs for Class Certification under Rule 23 of the Federal Rules of Civil Procedure. The proposed class ("Class") consists of the following:

All persons who purchased Scott Paper Company common stock during the period from January 30, 1990 through September 20, 1990, inclusive (the "Class Period"), and who sustained damages as a result of such purchases. Expressly excluded from the Class are the defendants herein, members of the immediate family of and persons affiliated with each defendant, and the legal representatives, heirs, successors or assigns of any of the defendants.

The named plaintiffs and purported class representatives are Frances Longstreth ("Longstreth"), James Finnan ("Finnan") and John Vaul ("Vaul"). On June 15, 1990, Longstreth purchased 1,000 shares of Scott common stock. On July 2, 1990, Finnan bought 500 shares of Scott common stock, which he sold on August 6, 1990. Vaul purchased Scott common stock on March 12, 1990, June 11, 1990 and September 10, 1990, through the Scott Dividend Reinvestment Plan. He also acquired stock on the open market in March, 1990 and privately from a friend on an unspecified date in June, 1990.

Scott's 1989 fiscal year earnings showed an increase of only 2% over the fiscal earnings of 1988. Plaintiffs allege that on or about January 30, 1990, defendant Lippincott attributed Scott's "disappointing" 1989 earnings principally to the "very unsatis-

factory" fourth quarter performance of the printing and publishing paper business and to "significant" manufacturing difficulties in that business throughout 1989. (Consolidated Complaint, ¶ 18). Lippincott also stated that he had "every expectation" that Scott's 1990 earnings would improve. Further supporting this statement, in a meeting of securities analysts on February 1, 1990, attended by the individual defendants, a Scott spokesman noted that security analysts were forecasting 1990 earnings of $4.40 per share as compared with $4.11 for 1989. The spokesman stated that Scott considered the analysts' figure "achievable." (Consolidated Complaint ¶ 19).

On or about April 17, 1990, at Scott's Annual Meeting of Shareholders, defendant Lippincott reported that Scott's first quarter earnings were a disappointing 27% decrease over its 1989 first quarter earnings. However, plaintiffs claim that the individual defendants stated that Scott expected 1990 earnings to be within the range of analysts' estimates of $4.10 to $4.63 per share. Subsequently, on July 17, 1990, defendants reported that Scott's earnings for the second quarter of 1990 were greater than those of the second quarter of 1989, setting a record as the best second quarter in Scott's history. At that time Lippincott stated that he remained "confident" that Scott would achieve its future goals. (Consolidated Complaint ¶ 25).

The market reacted positively to the second quarter earnings report, increasing the price of Scott stock. However, on September 20, 1990, Scott announced that its earnings for the third quarter and full year 1990 might not reach the same levels as earnings in the third quarter and full year 1989. (Consolidated Complaint, ¶ 29). On September 21, 1990, the market reacted to that announcement by dropping the price of Scott's common stock from $41.25 per share to $34.375 per share.

In order to obtain class certification plaintiffs must meet the requirements of Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure. *Eisen v. Carlisle &*

**2.** Count II, alleging violations of Sections 11, 12 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l, and 77o, was withdrawn by plaintiffs with the consent of the defendants.

*Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Rule 23(b) provides in relevant part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> .   .   .   .   .
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The Supreme Court has noted that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981). In keeping with this policy, the Court of Appeals for the Third Circuit has adopted a liberal construction of Rule 23 when considering shareholder suits seeking class action certification. *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). *See also, In re Kulicke & Soffa Industries, Inc., Securities Litigation,* 1990 WL 1478, 1990 U.S. Dist. LEXIS 167 (E.D.Pa.1990). The Court of Appeals has declared that "the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." *Eisenberg* at 785.

■ Defendants, in their Brief in Opposition to Plaintiffs' Motion for Class Certification, have stated that, with respect to the claims raised under §§ 10(b) and 20(a) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder, they do not challenge class certification based on the requirements of numerosity or commonality under Rule 23(a)(1) and 23(a)(2), or the requirement that common questions of fact or law predominate under Rule 23(b)(3). Defendants argue, however, that the plaintiffs Longstreth, Finnan, and Vaul, for different reasons, do not raise typical claims or will not adequately represent the Class, as required by Rule 23(a)(3) and 23(a)(4), for all or some of the proposed Class Period. Finally, the defendants object to any class certification with respect to issues raised under the state common law count for negligent misrepresentation (Count III).

Defendants have offered to stipulate to a class consisting of all persons who purchased Scott common stock during the period January 30, 1990 through June 15, 1990, with plaintiff Longstreth as the sole representative. Defendants object to Longstreth's ability to represent any class which includes members who bought stock after June 15, 1990, the date of her purchase. Defendants assert that, after June 15, 1990, Longstreth lacks standing and does not meet the typicality and adequacy of representation requirements of Rule 23(a)(3) and 23(a)(4).

When deciding a class certification motion, the issue of standing concerns the question of whether the claims of the named plaintiff are typical of those of the absent class members, as prescribed by Rule 23.

> . . . Rule 23 only requires that the representative's claim be typical of the claims or defenses of the class; it does not require that the class representative has standing for each of these claims. It [the standing requirement] is simply that an aspiring class representative "must be a member of the class and suffer injury common to the class." (Citations omitted). While the representative must be a member with standing, the [plaintiff's] class is not confined to that period proceeding [plaintiff's] final purchase of Pyramid stock; carving out such a period would be arbitrary. Reducing the class period according to [plaintiff's] purchase date would imply "that only someone

who bought on the last day of a class period would be able to bring an action based on the logical date alleged in the Amended Complaint."

*Alfus v. Pyramid Technology Corp.*, 764 F.Supp. 598, 606 (N.D.Cal.1991). Longstreth alleges she purchased her stock at an artificially inflated price during the proposed Class Period, and was injured thereby. Consequently, she has standing.[3] The question then becomes whether her claims are typical of the Class, and whether she will adequately represent the Class according to Rule 23.

▆▆▆ Defendants assert that factual conflicts exist between Longstreth and class members who purchased stock after her date of purchase, and therefore, her claims are not typical and she will not adequately represent the Class for the period from June 15, 1990 (her purchase date) to September 20, 1990. Defendants appear to be arguing that in order to be an adequate class representative, Longstreth's claims must be identical, or virtually identical, to all other class members. This argument is misplaced. The requirement of typicality will be met if the various claims of the plaintiffs appear to stem from a "single course of conduct" and there are common legal remedies. *Grasty v. Amalgamated Clothing and Textile Workers Union*, 828 F.2d 123, 130 (3d Cir.1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988). If the course of conduct which gives rise to the claims of the class members also gives rise to the representative plaintiffs' claims, and if the defendants have not taken any actions unique to the named plaintiffs, then the representative's claims are held to be typical. *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 373 (D.Del.1990). Typicality does not require that the claims of the class members be identical. *Weiss v. York Hospital*, 745 F.2d 786, 809 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985); *In re Atlantic Financial Federal Securities Litigation*, 1992 WL 50072, 1992 U.S. Dist. LEXIS 2706 (E.D.Pa.1992).

Plaintiffs allege that the defendants' misrepresentations and omissions constitute a pattern that was continuous through September 20, 1990. According to plaintiffs, certain information regarding the financial status of Scott was available to defendants beginning in January 30, 1990, but was not disclosed until September 20, 1990. The misrepresentations and omissions about Scott financial prospects during that period allegedly resulted in an inflated value for the stock. It is this alleged single course of conduct on the part of Scott which gives rise to the claims of both Longstreth and the members of the Class during the proposed eight month Class Period.

In order to determine the class period, the courts must review the individual facts of each case. A majority of courts have declined to find a conflict between a plaintiff and the class sufficient to deny certification simply because some class members purchased after the date of plaintiff's purchase. *Blackie v. Barrak*, 524 F.2d 891, 902 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). *See also, Green v. Wolf Corporation*, 406 F.2d 291, 300 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 307–308 (D.Mass.1987); and *Aboudi v. Daroff*, 65 F.R.D. 388, 391–392 (S.D.N.Y.1974).

In *Grossman v. First Pennsylvania Corporation*, 1991 WL 222071, 1991 U.S. Dist. LEXIS 15373 (E.D.Pa. October 23, 1991), the court considered a similar issue. The individual plaintiff alleged that in three consecutive annual reports the defendant corporation discussed the possibility of a merger and that this discussion resulted in holding the price of the defendant corporation's stock at an artificially low price. Plaintiff sold his stock after two of the three reports and claimed he was injured because he received a lower price than he should have. In his complaint, plaintiff

---

**3.** Defendants also argue that plaintiff Finnan lacks standing. This argument is without merit. Finnan, who has alleged injury as a result of the conduct of the defendants, has standing. Defendants do not raise the issue of standing with respect to Vaul.

claimed the right to represent both the claimants who sold before and after he did. Defendants argued that plaintiff should not be permitted to represent subsequent sellers. The court, in certifying the class, held that:

> The class period is not always a function of the purchase and sale dates of the named plaintiff's stock. It is determined by a review of the facts of the case and may exceed the purchase and sale dates of the named plaintiff's stock. This is especially true in situations involving a protracted course of conduct beyond the ownership dates of the class representative. (Citations omitted).

*Grossman,* 1991 WL 222071 at *5, 1991 U.S. Dist. LEXIS 15373 at *14. In the instant case, plaintiffs allege that defendants have pursued a single course of conduct over eight months, resulting in an inflated price for the stock and injury to the plaintiffs. Based on the facts alleged in this case, there is no conflict between Longstreth and a class which includes subsequent purchasers. Longstreth raises claims which are typical of all Class members and she is an adequate class representative.

■ Plaintiff Finnan has also been proposed as a class representative. Defendants argue that Finnan's claim is not typical and that he will not adequately represent the Class because he was an in-and-out trader, that is, he bought and sold his stock during the proposed Class Period, before the price of the stock fell. Defendants allege that because Finnan sold when he did, he recouped any alleged inflated price that he paid, thereby suffering no damage. It does not necessarily follow, however, that a plaintiff has recouped all of his or her losses simply because he or she sells stock in the inflated market in which it was bought. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433 (9th Cir.1987). Here, Finnan alleges a loss as a result of defendants' misrepresentations and omissions.

In *Wool* the Court of Appeals for the Ninth Circuit specifically rejected the argument presented by defendants here, that because the plaintiff sold in an inflated market, he recouped all of his losses. The court addressed the issue of whether an in-and-out trader, who bought stock at an alleged artificially inflated price, and who sold before a disclosure by the defendant corrected the misrepresentation which caused the inflated price, suffered actual damages.

> The out-of-pocket rule measures the damages recoverable by an individual who because of fraud or misrepresentation has been injured by market transactions in an actively traded stock. The out-of-pocket rule fixes recoverable damages as "the difference between the purchase price and the value of the stock at the date of purchase." (Citations omitted).

*Wool* at 1437. The court pointed out in its decision that the increment of artificial inflation caused by misrepresentations may fluctuate as a result of forces operating in the market independent of corrective disclosures by defendant, and accordingly, an in-and-out trader may still suffer loss, even in the absence of corrective disclosures. *Wool* at 1437. Even though Finnan sold before Scott's September 20, 1990 announcement which precipitated the drop in the price of Scott stock, Finnan is still entitled to show that he suffered a loss, as he alleges. No conflict exists between Finnan and the members of the proposed Class. Finnan raises claims which are typical of all class members and he is an adequate representative.

■ Defendants next object to the certification of Vaul as a class representative. They assert that he is unqualified because he cannot maintain a cause of action under Rule 10b–5. Defendants argue that Vaul cannot prove the requisite reliance on defendants' alleged misrepresentations and omissions.

Defendants focus their argument on Vaul's September 10, 1990 stock purchase which was an automatic dividend-reinvestment purchase of Scott stock. Defendants argue that this purchase was made pursuant to a long-term investment program which began when Vaul's parents-in-law began purchasing Scott stock, perhaps as early as 1942. Vaul's wife had inherited

the Scott stocks from her parents, and owned it until her death in 1982. During her lifetime, Mrs. Vaul informed her husband that she wished that anything that she had inherited from her mother and father would be handed down to their two children. After his wife's death, Vaul committed himself not to sell any of the Scott stock inherited from his wife. He also decided to reinvest all Scott dividends so that his children would get the benefit. To further that end, in about 1986 Vaul joined Scott's Dividend Reinvestment Plan, which he understood would automatically reinvest all his dividends every quarter at whatever the current market price might be. In addition, Vaul decided that, whenever he had money to spend, he would buy and hold additional Scott shares in order to continue to build his estate for his two children with Scott stock. Vaul testified at his deposition that he did not regularly keep informed as to the price of Scott stock, nor did he pay any real attention to the quarterly or annual reports received from Scott.

■ Pursuant to Rule 10b–5 a plaintiff must prove "reliance" on a defendants' alleged misrepresentations. Reliance may be proved in one of two ways. The plaintiff may show direct personal reliance, that is, the plaintiff became aware of the statements alleged to be misrepresentations and was thereby induced to buy stock. If the plaintiff cannot show direct personal reliance, the plaintiff is entitled to rely on a rebuttable presumption of reliance under the fraud-on-the-market principle. *Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). As stated by the Court of Appeals for the Third Circuit in *Peil v. Speiser,* 806 F.2d 1154 (3d Cir. 1986):

> ... the court will presume that the misrepresentation occasioned an increase in the stock's value that, in turn, induced the plaintiffs to purchase the stock.

*Peil* at 1161. The rebuttable presumption supplies the necessary "causal connection between the defendants' fraud and the plaintiffs' purchase of stock." *Peil* at 1161. Proof that price played no part in the decision of a person to purchase shares

of stock will overcome the presumption of reliance based on the fraud-on-the-market theory. *Moskowitz v. Lopp,* 128 F.R.D. 624, 631 (E.D.Pa.1989).

Defendants argue that they have rebutted the presumption because of the reasons given by Vaul during discovery for purchasing the stock, and by the manner in which the stock was purchased, that is, Scott's automatic reinvestment purchases. Even assuming that the defendants have rebutted the presumption as to Vaul's purchases through the Dividend Reinvestment Plan, they have not done so with respect to Vaul's other purchases on March 1, 1990 and in June, 1990. Vaul, having privately purchased stock on these two occasions during the Class Period, falls into the same category as Longstreth and Finnan, and is qualified, as a result of these purchases, to be a class representative.

■ Plaintiffs also seek class certification of Count III of the First Amended Complaint which asserts a claim that various individuals purchased Scott stock in reliance on certain negligent misrepresentations of the defendants, actionable under Pennsylvania common law. Defendants argue that it is not appropriate to certify such a pendant state law claim as a class action. Common law negligent misrepresentation claims raise issues which are individual to each plaintiff and which would overshadow the common issues. *See,* Rule 23(b)(3); *Squitieri v. Gould,* 133 F.R.D. 25, 28 (E.D.Pa.1990). An essential element of this common law claim is a plaintiff's affirmative reliance on the misrepresentation alleged. This reliance must be proved with respect to each individual plaintiff, a critical issue which would overshadow common issues. *Squitieri* at 28.

Accordingly, the pendant state common law claim will not be certified as a class action.

## ORDER

AND NOW, this 29th day of May, 1992, upon consideration of the Motion of Plaintiffs for Class Certification, and the supporting and opposing briefs, it is hereby ORDERED that with respect to plaintiffs'

claim in Count I of the First Amended Complaint pursuant to Sections 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j and 78t, the following class will be certified:

> All persons who purchased Scott Paper Company common stock during the period from January 30, 1990 through September 20, 1990, inclusive, and who sustained damages as a result of such purchases. Expressly excluded from the class are the defendants herein, members of the immediate family of and persons affiliated with each defendant, and the legal representatives, heirs, successors or assigns of any of the defendants.

It is further ORDERED that the Motion of plaintiffs to certify Frances Longstreth, James Finnan and John Vaul as the class representatives is GRANTED.

It is further ORDERED that the Motion of plaintiffs to certify their common law claim of negligent misrepresentation in Count III of the First Amended Complaint as a class action is DENIED.