J/H REAL ESTATE INC., individually
and on behalf of all others
similarly situated

v.

Leonard ABRAMSON, et al.

Civ. A. No. 95–4176.

United States District Court,
E.D. Pennsylvania.

Oct. 25, 1995.

Stephen A. Whinston, Berger & Montague, P.C., Philadelphia, PA, Lee S. Shalov, Milberg, Weiss, Bershad, Hynes and Lerach, New York City, Arthur Stock, Berger and Montague, P.C., Philadelphia, for plaintiff.

Joseph C. Kohn, Kohn, Savett, Klein & Graf, P.C., Philadelphia, PA, Michael J. Chepiga.

James J. Hagan, Simpson, Thacher & Bartlett, New York City, Harold E. Kohn, Steven M. Steingard, Kohn, Swift & Graf, P.C., Philadelphia, PA, James G. Kreissman, Simpson, Thacher and Bartlett, New York City, for defendants Leonard Abramson, Costas C. Nicolaides, U.S. Healthcare, Inc.

### MEMORANDUM

BARTLE, District Judge.

Plaintiff brings this purported class action against U.S. Healthcare, Inc. ("USHC") and two of USHC's top executives.[1] In Count I of the complaint, plaintiff alleges violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78j(b) and 78t(a), and of Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission ("SEC"). Plaintiff claims, in Count II of the complaint, common law negligent misrepresentation under Pennsylvania law. Before the court is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Defendants also move to dismiss for failure to plead fraud with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.[2]

Plaintiff seeks to represent a class of stockholders (the "Class") who purchased the Class A common stock of USHC between October 5, 1994 and April 19, 1995, inclusive (the "Class Period"). Compl. at ¶ 1. Plaintiff alleges USHC specializes in managed health care insurance plans, including health maintenance organizations. *Id.* at ¶ 10. According to the complaint, USHC competes against other managed care companies by maintaining its health care expenses at low levels in proportion to the premium income generated by USHC through its health care underwriting activity. *Id.* at ¶¶ 22, 37, 50.

By focusing on costs, USHC achieves a relatively low medical loss ratio ("MLR"). MLR is the ratio of medical expenses paid by USHC to its underwriting income. *Id.* at ¶¶ 22, 50. A low MLR means high profit margins and strong profitability. *Id.* at ¶¶ 22, 50.

During the Class Period, defendants allegedly engaged in a scheme to defraud plaintiff and the Class by consistently portraying USHC's operations and future prospects in a positive light despite the fact that defendants were in possession of materially adverse information. *Id.* at ¶¶ 2, 76–89. As a result of that supposedly fraudulent scheme, USHC's stock price was artificially inflated throughout the Class Period. *Id.* at ¶ 5. Consequently, plaintiff claims it and the putative class members were damaged by defendants' misconduct because each purchased USHC stock at prices which would not have been paid had there been full and adequate disclosure of the true facts concerning USHC's business and future prospects. *Id.* According to plaintiff's complaint, USHC had decided by October 5, 1994 to reverse its strategy of steadily lowering medical costs as a percentage of premium income. *Id.* at ¶¶ 50, 56. By that time defendants had allegedly begun to implement a strategy to lower dramatically its health care premiums while at the same time dramatically increasing its health care expenses. *Id.* at ¶¶ 58–59, 64–65. These changes, which were meant to meet competition, resulted in USHC increasing its MLR from 300 to 400 basis points by April 19, 1995. *Id.* at ¶ 48. Plaintiff contends that between April 19 and 20, 1995 USHC's shift in its revenue and cost structure resulted in a 25% decline in the market value of USHC stock. *Id.* at ¶¶ 47, 49.

As noted, defendants seek to dismiss plaintiff's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. When considering such a motion, the court must accept as true all allegations in the complaint, and all reason-

---

1. The executives named as defendants in the complaint are Mr. Leonard Abramson, USHC's principal executive officer and a director, and Mr. Costas C. Nicolaides, USHC's principal financial officer.

2. Plaintiff has also filed a motion to convert defendants' motion to dismiss into a motion for summary judgment and to provide plaintiff with an opportunity for discovery thereon under Rule 56(f) of the Federal Rules of Civil Procedure.

able inferences which can be deducted therefrom. *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). Generally, the court may "... consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." [3] *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993). Nonetheless, the Court of Appeals in *Pension Benefit* explained that in deciding a Rule 12(b)(6) motion, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* In that case the plaintiff had sued to recover unfunded pension benefits and based its claim on a written contract between the parties. *Id.* at 1195–96. Even though the contract itself was not attached to the complaint, *Pension Benefit* declared that the court could take the document into account in determining the defendant's motion to dismiss. *Id.* at 1196–97. However, if a party relies on materials outside the narrow limits set forth in *Pension Benefit,* Rule 12(b)(6) requires the court to treat the motion as one for summary judgment under Rule 56. Under those circumstances the party opposing the motion must be given a reasonable opportunity to conduct any necessary discovery and present all pertinent material. *See* Fed.R.Civ.P. 56(f); *Vosgerichian v. Commodore Int'l,* 862 F.Supp. 1371, 1375 (E.D.Pa.1994).

■ In the instant case, defendants rely on 39 documents in support of their motion to dismiss. Thirty-two of these documents were not referred to or relied upon by the plaintiff in the complaint and are not public records. They are press releases, securities analyst reports, teleconference transcripts, and magazine and newspaper articles. Thus, *Pension Benefit* prohibits us from making use of these documents in connection with a Rule 12(b)(6) motion. *Pension Benefit,* 998 F.2d at 1196–97.

---

**3.** A public record, for purposes of what may be considered on a motion to dismiss, includes criminal case dispositions, letter decisions of government agencies, and published reports of administrative bodies. *Pension Benefit Guar.*

■ The remaining seven documents, on which defendants rely, are: (1) an excerpt from USHC SEC Form 10–Q for third quarter 1994; (2) an excerpt from USHC SEC Form 10–Q for second quarter 1994; (3) an excerpt from USHC 1994 Annual Report; (4) an excerpt from USHC SEC 1994 Form 10–K; (5) Donaldson Lufkin & Jenrette Securities analyst report of Dec. 8, 1994; (6) SEC Form 4 Statement of Changes in Beneficial Ownership for Leonard Abramson of Nov. 8, 1994; and (7) SEC Form 4 Statement of Changes in Beneficial Ownership for Costas Nicolaides of Dec. 1, 1994. *See* Defendants' Appendix to their Motion to Dismiss Exhibits 1–4, 7, 12–13. These are either public records filed by the defendants with the SEC or material on which plaintiff relies in its complaint. Accordingly, the court may properly take into account these seven references in passing upon defendants' motion to dismiss. *Pension Benefit,* 998 F.2d at 1196–97.

■ Defendants first contend that their motion to dismiss Count I of the complaint should be granted under the "bespeaks caution" doctrine. This doctrine provides that:

> ... when an offering document's forecasts, opinions or projections are accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis for a securities fraud claim if those statements did not affect the "total mix" of information the document provided investors. In other words, cautionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law.

*In re Trump Casino Sec. Litig.,* 7 F.3d 357, 371 (3d Cir.1993). In order to decide whether cautionary statements render the misrepresentations and omissions immaterial, a defendant must establish that the cautionary statements "discredit the other one so obviously that the risk of real deception drops to nil." *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991). Furthermore, "disclaimers must relate directly to that on which investors

*Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1197 (3d Cir.1993). The court "may also consider matters of which judicial notice may be taken under Fed.R.Evid. 201." *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

claim to have relied." *Kline v. First W. Gov't Sec., Inc.,* 24 F.3d 480, 489 (3d Cir. 1994). On the other hand, a "vague or blanket (boilerplate) disclaimer which merely warns the reader that the investment has risks will ordinarily be inadequate to prevent misinformation. To suffice, the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions in the prospectus which plaintiffs challenge." *Trump Casino,* 7 F.3d at 371–72.

In *Trump Casino,* plaintiffs alleged that the prospectus accompanying the issuance of the bonds related to building the Taj Mahal casino in Atlantic City was materially misleading because it failed to disclose that:

> ... 1) the Taj Mahal required an average "casino win" of approximately $1.3 million per day on a continuing basis in order to service its debtload; 2) Donald Trump had personally guaranteed hundreds of millions of dollars in bank loans for other properties; and 3) the Taj Mahal had an "unprecedented" debt to equity ratio.

*Id.* at 366–67. In the prospectus, however, the following cautionary statement was made about the risks in purchasing any bonds:

> ... the intense competition in the casino industry; the absence of an operating history for the Taj Mahal which could serve as a basis for its valuation; the unprecedented size of the Taj Mahal casino in Atlantic City; and the enterprise's potential inability to repay the interest on the bonds in the event of a mortgage default and subsequent liquidation of the Taj Mahal.

*Id.* at 365. In affirming dismissal of plaintiffs' complaint, the Court of Appeals held that the prospectus "bespoke caution" because it "precisely cautioned that the bonds represented an exceptionally risky ... venture and that the [p]artnership's ability to repay the bonds was uncertain." *Id.* at 373. The court concluded that under no set of facts would the plaintiffs be able to establish that the alleged misrepresentations and omissions were material. *Id.* at 369 n. 13.

Here, plaintiff alleges that defendants' liability is premised on defendants' misrepresentation of and failure to disclose current and existing facts with regard to the business and financial condition of USHC. Specifically, the complaint states that during the purported Class Period: medical costs and expenses were escalating (Compl. at ¶ 57); USHC's MLR was increasing, not remaining the same or declining as defendants publicly represented (*Id.* at ¶¶ 58, 59); higher rates were being paid to physicians to attract them to USHC's network (*Id.* at ¶¶ 64, 65); premium rates were actually lowered (*Id.* at ¶ 67(b)); and, as a direct result of these factors, USHC was realizing material declines in its profit margins and earnings (*Id.* at ¶ 66). The complaint further alleges that these events and conditions were occurring at the very time defendants were assuring investors that: USHC's "growth [would] continue (*Id.* at ¶ 29); USHC would maintain its MLR at or below the levels achieved in 1994 (*Id.* at ¶ 35); USHC's medical costs were under control (*Id.* at ¶ 41); and the first quarter 1995 earnings estimates of securities analysts were achievable (*Id.* at ¶¶ 44, 45).

■ The "bespeaks caution" doctrine does not justify dismissal of this action insofar as plaintiff contends defendants concealed or misrepresented current events and business conditions. The doctrine applies only where forecasts or projections are accompanied by sufficient cautionary language. *Rubinstein v. Collins,* 20 F.3d 160, 167 (5th Cir.1994); *Goldman v. Belden,* 754 F.2d 1059, 1069 (2d Cir.1985). In other words, the misleading statements must be "forward-looking" before the "bespeaks caution" doctrine can be invoked. *See Trump Casino,* 7 F.3d at 371.

■ Defendants' reliance on the "bespeaks caution" doctrine also fails with respect to the complaint's allegations directed toward forward-looking statements. *See* Compl. at ¶ 67(d)–(e). The purported cautionary language cited by defendants consists of vague boilerplate statements concerning general industry conditions and risks. For example, defendants rely on page 34 of USHC's 1994 Annual Report, which broadly observes that "[a] number of factors ... may in the future affect the Company's ability to control its medical costs and other operating

expenses." [4] Other language from the Annual Report, to which defendants point, simply notes such possible contingencies as "major epidemics," "new technologies," and "inflation." *See* Defendants' Appendix to their Motion to Dismiss Exhibit 3. Defendants also quote USHC's report on SEC Form 10–Q for the third quarter of 1994 to the effect that "[g]overnmental action ... or business conditions ... could result in premium revenues not increasing as quickly as medical costs and other operating expenses." These references do not help defendants. None of them was "tailored" to the "specific future projections" on which plaintiff relies. *See Trump Casino, supra* at 371–72. None of them nullifies the alleged misrepresentations and omissions. *See Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1097, 111 S.Ct. 2749, 2760–61, 115 L.Ed.2d 929 (1991); *Trump Casino,* 7 F.3d 357, 371–72 (3d Cir. 1993). Moreover, it is important to note that in *Trump Casino* everything was contained within the four corners of one document, the prospectus. The cautionary language "accompanied" the allegedly misleading forecasts. *Trump Casino,* 7 F.3d at 371–72. In contrast the alleged cautionary statements in this case were scattered about in different places, making it harder to conclude as a matter of law that they had a cautionary effect. At this pleading stage, we cannot say that any cautionary phrases reduced "the risk of real deception ... to nil." *Virginia Bankshares,* 501 U.S. at 1097, 111 S.Ct. at 2760. Accordingly, the defendants' motion to dismiss this complaint under Rule 12(b)(6) on the basis of the "bespeaks caution" doctrine will be denied.

Defendants have next moved to dismiss Count I of the complaint for failure adequately to plead scienter in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake, shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Thus, although a complaint may state a claim for securities fraud under § 10(b) of the Securities Exchange Act of 1934 under general notice pleading, the complaint falls if it fails to satisfy the particularity standard of Rule 9(b).

The case of *Craftmatic Sec. Litig. v. Kraftsow,* 890 F.2d 628, 646 (3d Cir.1989) is the leading decision in this circuit interpreting Rule 9(b) in the context of a securities action. "[A] flexible application" of the Rule is the touchstone. *Id.* The case cautions against "too narrow an approach [which] fails to take account of the general simplicity and flexibility contemplated by the rules." *Id.* at 645. It recognizes that there are "sophisticated defrauders" who may escape justice if the courts apply too strict a requirement of particularity. *Id.* The court reminds us of the reality that "in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs." *Id.* Nonetheless, Rule 9(b) is not a nullity. Pleaders must allege that the necessary information lies within defendants' control and must set forth "statements of the facts upon which the allegations are based." *Id.* In other words, plaintiffs must state "facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendants' control." *Id.* at 646; *see also Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 285 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992).

 In this case, the plaintiff has satisfied the requirement of Rule 9(b). One of the defendants is a large corporation whose internal activities are not an open book. The complaint contains a detailed statement of facts. It also asserts that defendants have exclusive control over certain information concerning USHC, summarizes the general nature of that information, and explains the reasons why plaintiff has been unable to gain access to that material. Compl. at pp. 1–2.

 Defendants make one last argument to dismiss Count I of the complaint

---

**4.** USHC SEC Form 10–Q for the third quarter 1994, USHC SEC Form 10–Q for the second quarter 1994, and USHC SEC 1994 Form 10–K cited by defendants use substantially the same language. *See* Defendants' Appendix to their Motion to Dismiss Exhibits 1, 2, 4.

under Rule 12(b)(6). They contend that plaintiff failed to allege that its purchase of USHC stock was preceded by actionable misrepresentations or omissions. In order for plaintiff's Rule 10b–5 claim to succeed, plaintiff must assert a deception or manipulation "in connection with the purchase or sale of a security." *Ketchum v. Green,* 557 F.2d 1022, 1023 (3d Cir.1977). According to the complaint, defendants made misleading statements prior to plaintiff's purchase of USHC stock on December 15, 1994. Compl. at ¶ 9. Specifically, plaintiff relies on two press releases issued by USHC in October, 1994 and two securities analyst reports published in October and December of 1994 respectively. *Id.* at ¶¶ 29–32. The two press releases trumpet USHC's enrollment growth and ability to decrease its MLR. However, they do not disclose that USHC was decreasing premiums and increasing medical costs in an effort to improve upon USHC's enrollment trends.[5] The two reports of the securities analysts are similar to the statements appearing in the defendants' prior press releases. *See Basic Inc. v. Levinson,* 485 U.S. 224, 227 n. 4, 250, 108 S.Ct. 978, 981 n. 4, 993, 99 L.Ed.2d 194 (1988); *In re Bioscience Sec. Litig.,* 806 F.Supp. 1197, 1204 (E.D.Pa.1992). Furthermore, the complaint ties the misrepresentations in the reports to the individual defendants or to James Dickerson, USHC's senior financial officer. Compl. at ¶¶ 70, 71, 75. Under the so-called entanglement theory, "a company may so involve itself in the preparation of reports and projections by outsiders as to assume a duty to correct material errors in those projections." *Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 163 (2d Cir.1980). Such liability attaches where that defendant "sufficiently entangled itself with the analysts' forecasts."[6] *Id.*

The federal securities laws impose a "duty to disclose any material facts that are necessary to make disclosed material statements, whether mandatory or volunteered, not misleading." *See In re Craftmatic Sec. Litig.,* 890 F.2d 628, 641 (3d Cir.1989). Thus, when a corporation makes positive statements concerning an aspect of a company's business operations—such as defendants' October, 1994 statements concerning USHC's enrollment growth and MLR—the corporation is obligated to make full disclosure of all relevant material facts so as to make the statements not misleading. *Id.* Plaintiff has pleaded with sufficient particularity that defendants' material misrepresentations occurred in October and December of 1994, before and thus "in connection with" its purchase of USHC stock.

Finally, defendants move to dismiss Count II of the complaint, alleging common law negligent misrepresentation, for failure to state a claim upon which relief can be granted. Under Pennsylvania law, an essential element of a claim for common law misrepresentation is a plaintiff's affirmative reliance on the misrepresentation alleged. *See Squitieri v. Gould,* 133 F.R.D. 25, 28 (E.D.Pa.1990); *In re Scott Paper Co. Sec. Litig.,* 142 F.R.D. 611, 617 (E.D.Pa.1992). In the instant case, the complaint asserts the necessary allegations of reliance to survive a Rule 12(b)(6) motion.

Accordingly, defendants' motion to dismiss plaintiff's complaint will be denied. We will

---

5. Plaintiff alleges that defendants made the following statements which were materially false and misleading:

(1) on October 5, 1994, defendant Abramson stated, "The Company anticipates that its strong [enrollment] growth will continue" (Compl. at ¶ 29);

(2) defendants announced on October 24, 1994 that the Company had lowered its MLR to 68.9% (*Id.* at ¶ 30); and

(3) on October 24, 1994, defendant Nicolaides boasted, "Our membership growth reflects increased public recognition that we offer access to quality care at an affordable price." (*Id.* at ¶ 30).

6. In order to establish "sufficient entanglement," a plaintiff must:

(1) identify specific analysts' forecasts and name the insider who adopted them; (2) point to specific interactions between the insider and the analyst which gave rise to entanglement; and (3) state when these interactions occurred. Furthermore ... the plaintiff must allege that the insider provided misleading information to an analyst, that the analyst relied on this information in preparing a report, and that the insider somehow endorsed or approved the report prior to or after its publication.

*Stack v. Lobo,* 903 F.Supp. 1361, 1370 (N.D.Cal. 1995) (citations omitted).

not convert defendants' motion to dismiss into a motion for summary judgment at this time. Discovery has not yet begun. After discovery has proceeded, the parties may, of course, file summary judgment motions, if appropriate.