Filed:   January 7, 1997

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 96-1010
(CA-95-378)

Alan H. Gasner, et al,

Plaintiffs - Appellants,

versus

The Board of Supervisors of the County of
Dinwiddie, Virginia, etc., et al,

Defendants - Appellees.

O R D E R

The Court amends its opinion filed December 31, 1996, as
follows:

On page 2, section 2, line 3 -- "Robert E. Payne, District
Judge" is corrected to read "James R. Spencer, District Judge."

On page 3, section 1, line 12 -- "Scott S. Bliss" is corrected
to read "Steven S. Biss."

On page 26, first full paragraph, line 9 -- the word "pendant"
is corrected to read "pendent."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALAN H. GASNER; SIGNET TRUST
COMPANY, as Trustee under,
Indenture of Trust dated April 15,
1993, with the Industrial
Development Authority of
Dinwiddie County, Virginia,
<u>Plaintiffs-Appellants,</u>

v.

THE BOARD OF SUPERVISORS OF THE
COUNTY OF DINWIDDIE, VIRGINIA, in
their official capacity; CHARLES W.
BURGESS, JR.; DEWEY P. CASHWELL;
THE INDUSTRIAL DEVELOPMENT
AUTHORITY OF DINWIDDIE COUNTY,
VIRGINIA, a political subdivision of

the Commonwealth of Virginia;
CARTER KAPLAN AND COMPANY, a
Virginia Limited Partnership;
CARKAP, INCORPORATED, a Virginia
Corporation; WILLIAM P. CARTER;
ROBERT R. KAPLAN; EMS
ENGINEERING, P.C., a New York
Professional Corporation; VIRGINIA
BIO-FUEL CORPORATION, a Virginia
Corporation; FUNNELL INDUSTRIES,
INCORPORATED, a New York
Corporation; BARRY H. FUNNELL;
HARVEY T. BAXTER, III; HIRSCHLER,
FLEISCHER, WEINBERG, COX & ALLEN,
P.C., a Virginia Professional
Corporation; DAVID F. BELKOWITZ;

No. 96-1010

SANDS, ANDERSON, MARKS & MILLER,
P.C., a Virginia Professional
Corporation; DANIEL M. SIEGEL; THE
COUNTY OF DINWIDDIE, a Political
Subdivision of the Commonwealth
of Virginia,
Defendants-Appellees,

and

FREDERICK C. MALONEY; SHARON M.
MALONEY,
Parties in Interest.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-95-378)

Argued: October 31, 1996

Decided: December 31, 1996

Before MURNAGHAN and NIEMEYER, Circuit Judges, and
HARVEY, Senior United States District Judge for the District of
Maryland, sitting by designation

_____

Affirmed by published opinion. Senior Judge Harvey wrote the
majority opinion, in which Judge Niemeyer joined. Judge Murnaghan
wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Atherton Northup, MAYS & VALENTINE,
Richmond, Virginia, for Appellants. J. Jonathan Schraub, ROBINS,

2

KAPLAN, MILLER & CIRESI, Washington, D.C.; Heman A. Marshall, III, WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, Virginia; Gary Alvin Bryant, WILLCOX & SAVAGE, P.C., Norfolk, Virginia, for Appellees. **ON BRIEF:** Robert L. Brooke, Alan D. Wingfield, MAYS & VALENTINE, Richmond, Virginia; Murray H. Wright, Jonathan S. Geldzahler, WRIGHT, ROBINSON, MCCAMMON, OSTHIMER & TATUM, Richmond, Virginia, for Appellants. Danny M. Howell, ROBINS, KAPLAN, MILLER & CIRESI, Washington, D.C.; Frank K. Friedman, WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, Virginia; Stephen T. Gannon, L. B. Cann, III, LECLAIR RYAN, JOYNES, EPPS & FRAMME, P.C., Richmond, Virginia; Daniel A. Gecker, Steven S. Biss, MALONEY, BARR & HUENNEKENS, P.C., Richmond, Virginia, for Appellees.

_____

**OPINION**

HARVEY, Senior District Judge:

This litigation arose as a result of the financial failure of an anaerobic composting facility (the "Facility") constructed by a private firm for the purpose of processing the solid waste of a Virginia county. Bonds issued to finance the purchase and installation of equipment for the Facility were defaulted when the venture failed. Bondholders then filed suit in the United States District Court for the Eastern District of Virginia, alleging violations of federal securities laws and Virginia state law. Named as defendants in the action were the County, the industrial development authority which had issued the bonds, the bond underwriter, attorneys for some of the parties and various other individuals and corporate entities.

Motions to dismiss and for summary judgment were filed by the defendants. Following a hearing, the district court granted defendants' motions for summary judgment. This appeal followed. Because we find no merit to any of the errors assigned by the appellants, we affirm the judgments entered below.

I

In an effort to satisfy its governmental function of disposing of trash generated by its residents while complying with recycling

3

requirements imposed by the State, Dinwiddie County, Virginia (the "County") developed a plan for the construction and operation of a facility which would process the County's solid waste without the use of costly landfills. Virginia Bio-Fuel Corporation ("VBFC"), a private corporation, was engaged to construct and operate the Facility. The County's existing landfill was to be closed, a concrete building was to be constructed on the site and VBFC was to install equipment designed to combine biodegradable waste with sewage sludge to create mulch. It was decided that the project would be financed by means of tax free municipal bonds to be issued by the Industrial Development Authority of Dinwiddie County (the "Authority"), a political subdivision of the Commonwealth of Virginia. The Authority had been established to further industrial development in the County, by serving, inter alia, as a vehicle whereby private businesses might secure tax exempt financing.

In December of 1992, the Authority issued $1,120,000 in bonds to finance the closure of the County's existing landfill (the "Closure Bonds"). In March of 1993, the Authority issued $1,230,000 in bonds to finance the construction of the building which would house the new composting Facility (the "Building Bonds"). In April of 1993, the Authority issued $3,000,000 in bonds to finance the acquisition of recycling and co-composting equipment to be installed in the building then under construction (the "Equipment Bonds"). The Equipment Bonds were issued pursuant to the terms of an Offering Statement dated April 15, 1993. It is the Equipment Bonds which are at issue in this case.[1]

Proceeds received by the Authority as a result of the sale of the Equipment Bonds were to be loaned by it to VBFC which was to use the funds to acquire and install the necessary recycling and composting equipment. VBFC had entered into an Operations Contract with the County whereby the County was to pay VBFC a fixed rate for waste disposed of in the Facility. Although the Equipment Bonds were issued by it, the Authority was obligated to pay the principal of

_____

[1] The Building Bonds and the Closure Bonds were issued by the Authority with financing to be provided by the County. Unlike these County obligations, the Equipment Bonds were not backed by the full faith and credit of the County.

4

and the interest on the Bonds only from funds received from VBFC under the Note which VBFC had executed in favor of the Authority. Thus, the obligation for payment of such principal and interest was, under the Offering Statement, essentially that of VBFC.

From the outset of its operation of the Facility, VBFC encountered serious problems. The materials used proved to be of poor quality. VBFC lacked sufficient financial resources to permit it to operate, mainly because it had been unable to secure contracts with other counties for the processing of their waste. Sufficient revenue was therefore not forthcoming for the operation of the Facility, and funds were not available for payment of principal and interest to bondholders. In October of 1994, the project was abandoned, resulting in a default of the Equipment Bonds.

Alan H. Gasner ("Gasner") is the holder of $955,000 of the Equipment Bonds. Signet Trust Company ("Signet") is Trustee under the Indenture Trust covering the Bonds. Gasner and Signet filed a complaint and later an amended complaint in the United States District Court for the Eastern District of Virginia seeking compensatory damages arising as a result of the bond default.[2] Named as defendants, inter alia, were the County, the Authority, VBFC, and Carter Kaplan & Company, L.P. ("Carter Kaplan"), the brokerage firm which had underwritten the issuance of the bonds.[3]

_____

[2] Gasner sued on his own behalf and on behalf of a class of similarly situated persons.

[3] Also named as defendants were the Board of Supervisors of the County (the "Board"), Charles W. Burgess, Jr. (the County Administrator), Dewey P. Cashwell (the former County Administrator), Carkap, Inc. (the general partner of Carter Kaplan), William P. Carter and Robert R. Kaplan (officers of Carter Kaplan), EMS Engineering, P.C. (an engineering firm), Funnell Industries, Inc. (manufacturer of the equipment used in the facility), Barry H. Funnell (an officer, director and owner of Funnel and of VBFC), Harvey T. Baxter (an officer, director and owner of VBFC), Hirschler, Fleischer, Weinberg, Cox & Allen, P.C. (a law firm which served as counsel for the underwriter and as bond counsel), David F. Belkowitz (an attorney employed by the Hirschler, Fleischer firm), Sands, Anderson, Marks & Miller, P.C. (the law firm which served as counsel for both the County and the Authority), and Daniel M. Siegel (an attorney employed by the Sands, Anderson firm).

5

In Count 1 of their amended complaint, plaintiffs claimed that defendants had violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j) and Rule 10b-5, 17 C.F.R. § 240.10b-5 (hereinafter the "Rule 10b-5 claim"). It was alleged in Count 1 that all defendants had made or caused to be made untrue or misleading statements or omissions of material fact in connection with the issuance of the Equipment Bonds.

Count 2 of the amended complaint charged a violation of § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2). It was alleged in Count 2 that the County, the Board, the Authority, VBFC and Carter Kaplan had sold the Equipment Bonds by means of untrue statements of material fact and by means of wrongful omissions.[4]

Count 3 charged a violation of § 12(1) of the Securities Act of 1933, 15 U.S.C. § 77l(1). It was alleged in Count 3 that the County, the Board, the Authority, VBFC and Carter Kaplan were sellers of securities with respect to the issuance of the Equipment Bonds and that the Bonds had not been properly registered as required by § 5 of the 1933 Act.[5]

Counts 4 through 16 of the amended complaint asserted pendent claims under Virginia law pursuant to the district court's supplemental jurisdiction. Claims of violations of the Virginia Securities Act, fraud, breach of contract, attorney malpractice, engineer malpractice, conversion, tortious interference with contract, breach of fiduciary duty and wrongful taking of trust property were included in those Counts.

At an early stage of the case, defendants filed motions to dismiss or for summary judgment. Since affidavits and exhibits had been submitted in support of these motions, they were treated by the district court as motions for summary judgment under Rule 56, F.R.Civ.P. Following a hearing, the district court issued a Memorandum Opinion

_____

[4] Count 2 further alleged that defendants Funnell, Baxter and Carter Kaplan were secondarily liable under § 15 of the 1933 Act.

[5] Count 3 further alleged that defendants Funnell, Baxter and Carkap were secondarily liable as controlling persons of VBFC or Carter Kaplan, pursuant to § 15 of the 1933 Act.

6

and Final Order on December 7, 1995, granting the defendants'
motions for summary judgment. The Court ruled (1) that Counts 1
and 2 of the amended complaint should be dismissed with respect to
all defendants because the defendants had made no material misrepre-
sentations or omissions in the Offering Statement; (2) that, alterna-
tively, Count 1 should be dismissed as to all defendants because
plaintiffs had failed to demonstrate loss causation; (3) that, alterna-
tively, Count 1 should be dismissed as to the County and certain other
defendants because they had no affirmative duty of disclosure; (4)
that, alternatively, Count 2 should be dismissed as to the County, the
Board and the County Administrator because they were not statutory
sellers under § 12(2); (5) that Count 3 should be dismissed because
the issue presented was not ripe for decision and there was accord-
ingly no case and controversy before the court; and (6) that the pen-
dent state law claims should be dismissed without prejudice inasmuch
as the federal claims were being dismissed with prejudice.

This appeal followed.

II

Appellants first challenge the district court's determination that
plaintiffs' Rule 10b-5 and § 12(2) claims must fail because defendants
made no material misrepresentations or omissions in the Offering
Statement for the Equipment Bonds. Since the decision below was
reached by way of the district court's granting of defendants' motions
for summary judgment, the standard for review is de novo. Schatz v.
Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991), cert. denied, 503 U.S.
936 (1992). What must be determined on this record is whether in
opposing defendants' motions, plaintiffs presented evidence of suffi-
cient "caliber and quantity" that a reasonable jury could return a ver-
dict for the plaintiffs. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248, 254 (1986).

To establish liability under Rule 10b-5, a plaintiff must prove the
following elements: (1) that in connection with the purchase or sale
of a security the defendant made a false statement or omission of
material fact; (2) with scienter; (3) upon which the plaintiff justifiably
relied; and (4) that proximately caused plaintiff's damages. Hillson
Partners Ltd. Partnership v. Adage, Inc., 42 F.3d 204, 208 (4th Cir.

7

1994); Schatz, 943 F.2d at 489. To establish liability under § 12(2), a plaintiff must prove (1) that defendant offered or sold a security; (2) by the use of any means of communication in interstate commerce; (3) through a prospectus; (4) by making a false statement or omission of material fact; (5) the untruth of which was known by defendant but not known by plaintiff; and (6) that caused plaintiff's damages. Ballay v. Legg Mason Wood Walker, Inc., 925 F.2d 682, 687-88 (3d Cir.), cert. denied, 502 U.S. 820 (1991).

For a misrepresentation or omission to violate both Rule 10b-5 and § 12(2), it must be material. The question of materiality is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor. TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 445 (1976).**6** A misrepresented or omitted fact is material if there is a substantial likelihood that a reasonable investor would have been caused by disclosure of the truthful fact to change his decision to purchase the security. Id. at 449; Walker v. Action Industries, Inc., 802 F.2d 703, 706 n.6 (4th Cir. 1986), cert. denied, 499 U.S. 1065 (1987). Disclosure of the true facts or of the omitted fact must have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available. TSC Industries, 426 U.S. at 449.

In contending that appellees' motions for summary judgment should have been denied, appellants rely on several statements in the Offering Statement claimed to be misrepresentations and one omission. First, they assert that appellees misrepresented the anaerobic composting technology by labeling it as "proven." Second, they contend that appellees misrepresented the commercial viability of the Facility. Third, they assert that appellees omitted to state that the State of Virginia would issue to the Facility only a one-year experimental operating permit.

_____

**6** In TSC Industries, the Supreme Court articulated the standard for determining when an omission would be considered material for purposes of a claim under § 14(a) of the 1934 Act. Subsequently, the Supreme Court expressly adopted the TSC Industries standard of materiality "for the § 10(b) and Rule 10b-5 context." Basic, Inc. v. Levinson, 485 U.S. 224, 232 (1988).

8

The Offering Statement dated April 15, 1993 is some 49 pages in length and contains detailed information relating to the issuance of the bonds by the Authority. Attached to the Offering Statement is a Feasibility Statement submitted by EMS Engineering, Inc. Appellants claim that the following statements contained in the concluding paragraph of the Feasibility Statement are material misrepresentations:

> The co-composting and materials recovery equipment are proven technology and are being used in other facilities. (p. 4)

> \* \* \*

> [W]e have compared the design and engineering aspects of the Facility to existing operational facilities in New York, California and Europe and have incorporated the same proven aspects of engineering and design into the Facility. (p. 4)

Following abandonment of the project, the County hired Organic Waste Systems ("OWS"), a Belgian waste management consulting firm, to evaluate the Facility and make recommendations for its possible future use. On May 30, 1995, OWS issued a 51-page Report entitled "Evaluation of Materials Recovery and Co-composting Facility at Dinwiddie County." Appellants did not submit any affidavit of an expert in opposing appellees' motions for summary judgment. Rather, in arguing that certain statements in the Offering Statement are false, appellants relied on the following selected portions of the OWS Report:

> The technology of dry anaerobic digestion was an emerging technology at the time of selection. (p. 5).

> \* \* \*

> . . . the development in the U.S. of anaerobic high solids digestion systems has virtually stagnated and has been limited to some small pilot scale experiences. (p. 10).

> \* \* \*

9

> None of the existing technologies were [sic ] actually proven over a long period of time and no long term reliable investment and operating costs were available. (p. 12).

According to appellees, substantial evidence before the district judge established that the technology in question was not "experimental" and "unproven." Appellees refer to the following statements in the OWS Report:

> Anaerobic dry digestion facilities, started up or contracted for at the same time [as the VBC Facility], have shown to be very successful, indicating that a viable technology was available. Anaerobic composting as a general technology has now been widely accepted in Europe and is considered to be a viable alternative to conventional aerobic composting. (p. 5).

> \* \* \*

> Even though the technology was available and has been confirmed by further growth in the marketplace, VBC failed to provide an adequate anaerobic composting system. (p. 5).

> \* \* \*

> The technology of dry or high-solids digestion of solid waste in general was at the moment of selection of the proposed technology already more than ten years under development. (p. 9).

> \* \* \*

> By the summer of 1992, the time of the process selection for Dinwiddie County, several full-scale plants using the dry digestion of organic waste were operating in Europe. (p. 9).

> \* \* \*

> The technology has been established as a proven technology from a technical point of view. (p. 11).

10

* * *

. . . the selection was made at a time when the technology had progressed from a pilot-scale to a full-scale development, with a number of full-scale plants demonstrating the viability of the technology on a full-scale. (p. 12).

* * *

Plants started up or contracted for around the same time as the moment of the selection by the county [of] VBC, have been successful and indicate that the technology for dry anaerobic composting was available and mature. (p. 13).

Appellees further rely on the affidavit of Luc De Baere, the primary author of the OWS Report, who stated that appellants had misinterpreted the Report.[7] Referring to various portions of the Report, De Baere stated that anaerobic composting technology was not experimental or unproven as of 1993. According to De Baere, anaerobic dry digestive facilities in Europe which began at the same time as the Dinwiddie County Facility have proven to be successful, and anaerobic composting technology is widely accepted in Europe.

Appellants further argue that the failure of the Offering Statement to indicate that the Virginia Department of Waste Management ("DWM") would be issuing only a temporary permit for the Facility was a material omission. By way of reply, appellees point out that it was not known when the Offering Statement was issued on April 15, 1993, whether a final permit or a temporary permit would be issued. In a letter dated January 25, 1993, a representative of Commonwealth Environmental Associates, Inc. indicated that it was his opinion that the issue concerning the type of permit to be issued by the DWM would be resolved shortly in favor of VBFC. In his letter of February 25, 1993, to County Administrator Cashwell and VBFC, an environmental engineer of the Virginia DWM indicated that the VBFC application was incomplete. The County and VBFC were asked to address,

_____

[7] The De Baere affidavit, dated September 27, 1995, was submitted by appellees as a reply to appellants' opposition to appellees' motions for summary judgment.

11

inter alia, the question whether an experimental permit should be issued. The parties were there invited to make further comments and address the deficiencies noted so that a full review of the application could be made. A final decision was not made by the DWM until later, and the experimental temporary permit itself was not issued until January 7, 1994, well after the date of the Offering Statement.**8**

It is not necessary, however, for this Court to decide if a genuine issue of fact exists as to whether the statements relied upon by the appellants were false or misleading and as to whether the omission relied upon pertained to a fact which rendered other statements misleading. We are satisfied on the record before us that the alleged misrepresentations and omission were not material. There is not a substantial likelihood here that the disclosure of the allegedly false facts or omitted fact would have been viewed by a reasonable investor as having significantly altered the total mix of information made available. TSC Industries, 426 U.S. at 449.

Appellants have based their case essentially on a few isolated passages in the lengthy Offering Statement. In so doing, they have disregarded the "total mix" of available information. The alleged misrepresentations and omission relied upon by appellants must be considered in the full context in which they were made. Cautionary language in an offering document may negate the materiality of an alleged misrepresentation or omission. In re Donald J. Trump Casino Securities Lit., 7 F.3d 357, 371 (3d Cir. 1993), cert. denied sub nom. Gollomp v. Trump, 510 U.S. 1178 (1994). This is the so-called "bespeaks caution" doctrine relied upon by various courts in concluding that claims of securities fraud are subject to dismissal if cautionary language in the offering document negates the materiality of the alleged misrepresentations or omissions. Id.; see also Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1040 (6th Cir. 1991); I. Meyer Pincus & Assocs. v. Oppenheimer & Co., 936 F.2d 759, 763 (2d Cir. 1991); Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 (1st Cir. 1991); Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986); Polin v.

_____

**8** Under Virginia law, the one-year temporary permit was renewable for three additional years. Variances could thereafter be requested for further extensions of the permit.

12

Conductron Corp., 552 F.2d 797, 806 n.28 (8th Cir.), cert. denied, 434 U.S. 857 (1977).

In this case, the Offering Statement is replete with cautionary language, examples of which are as follows:

> VBFC presently has no significant assets other than the Operations Contract and a contract with the County for the closure of the County's landfill. Since VBFC has no significant source of revenue with which to pay the Note other than the Revenues and revenues from commercial haulers and private deliveries, no financial statements for VBFC are included in this Offering Statement. (p. 11)

> \* \* \*

> VBFC's ability to repay the Note is entirely dependent on the volume of solid waste disposed of at, and processed through, the Building. The County has no historical records on the volume of solid waste collected by the County and successfully disposed of at the County landfill. . . . There can be no assurances that the County will collect sufficient solid waste for processing at the Facility so that the fees paid to VBFC under the Operations Contract or that the sale by VBFC of recycled materials will provide VBFC with adequate revenues to make the payments due under the Note. (pp. 13-14)

> \* \* \*

> In summary, the payment of the principal of, premium, if any, and interest on, the Bonds predominantly is dependent upon the operation of the Facility by VBFC in accordance with the Operations Contract. VBFC is an early stage company with insufficient financial resources to withstand any significant, adverse, economic developments that directly affect it or indirectly affect it by impacting its affiliates, specifically Funnell. (p. 17).

> \* \* \*

13

> VBFC has never operated a facility similar to the Facility
> . . . (p. 21)

> There can be no guarantee that the Building will be completed, and if completed that it will functionally operate as a solid waste facility or that once operational that it will generate sufficient revenues to meet operational costs and repay principal and interest under the Note. . . (pp. 21-22)

We are persuaded that the above cautionary language in the Offering Statement renders immaterial as a matter of law the alleged misrepresentations and omission relied upon by appellants. There is not under the circumstances here a substantial likelihood that a prospective investor would have viewed the "total mix" of information to have been significantly altered had such investor known that anaerobic composting technology had not been proven over a long period of time. Nor would it have made a significant difference to a prospective investor that the State of Virginia had not by April 15, 1993 finally decided whether to issue a permanent or an experimental operating permit.

Relying on Huddleston v. Herman & MacLean, 640 F.2d 534, 543-44 (5th Cir. 1981), rev'd in part on other grounds, 459 U.S. 375 (1983), appellants argue that only general cautionary language was contained in the Offering Statement and that the inclusion of such language does not excuse defendants' failure to reveal known adverse facts. We disagree. These were not merely vague, boilerplate disclaimers. Rather, extensive and meaningful cautionary language was included in the Offering Statement, and the language used describes in specific detail the risks which a purchaser would assume by purchasing the Bonds. In particular, purchasers of the Bonds were told that there could be "no guarantee" that, if completed, the Building "will functionally operate as a solid waste facility" or that once operational "it will generate sufficient revenues to meet operational costs and repay principal and interest. . . ." They were further told that VBFC had never previously operated a facility similar to the one which was to generate revenue for payment of bond interest and principal. Here, as in Trump, the cautionary statements were tailored precisely to address the uncertainty surrounding repayment of the Bonds because of the possible inability of VBFC to generate sufficient reve-

14

nues to make the necessary principal and interest payments. See In re Donald Trump, 7 F.3d at 372.

The venture failed because of the occurrence of the very same events outlined as risks in the Offering Statement. As noted, VBFC had no significant assets other than its contracts with the County. The sole source of funds for the payment of interest and principal to bond-holders was the income which VBFC was to receive from its contracts with the County and from future contracts with other Virginia counties. County payments commenced in April of 1994, but VBFC was not thereafter able to secure contracts from other counties. Because it was under-capitalized and had severe cash flow problems, VBFC announced in September of 1994 that it was unable to fulfill its obligations under its contracts with the County. Operations ceased on October 5, 1994, and the County then stopped making payments. On October 31, 1994, Signet, as Trustee, declared the Bonds to be in default.[9]

For these reasons, we conclude that summary judgment was properly entered by the district court in favor of the appellees as to Counts 1 and 2. Although the total mix of the information made available warned them of the high risks they were facing, the bond-holders nonetheless chose to purchase these Bonds. They can hardly now claim that their losses were, pursuant to Rule 10b-5 and § 12(2), the result of securities fraud committed by the appellees.

III

Insofar as Count 1 of the amended complaint is concerned, the entry of summary judgment in favor of defendants is supportable on another ground. In a suit brought under Rule 10b-5, "the plaintiff must show both `loss causation -- that the misrepresentations or omissions caused the economic harm -- and transaction causation -- that the violations in question caused the [plaintiff] to engage in the transaction in question.'" Bennett v. United States Trust Co., 770 F.2d 308, 313 (2d Cir. 1985), cert. denied, 474 U.S. 1058 (1986) (quoting

_____

[9] In October of 1994, the County, the Authority and Siegel, as escrow agent, filed suit in the Circuit Court for Dinwiddie County, naming as defendants VBFC, Funnell, Signet and others.

15

from <u>Schlick v. Penn-Dixie Cement Corp.</u>, 507 F.2d 374, 380 (2d Cir. 1974), <u>cert</u>. <u>denied</u>, 421 U.S. 976 (1975)); <u>Wilson v. Ruffa & Hanover, P.C.</u>, 844 F.2d 81, 85 (2d Cir. 1988), <u>vacated on other grounds</u>, <u>Wilson v. Saintine Exploration & Drilling Corp.</u>, 872 F.2d 1124 (2d Cir. 1989). A direct or proximate relationship between the loss and the misrepresentation must be shown. <u>Bennett</u>, 770 F.2d at 314.

Here, it was the inexperience of VBFC personnel, the company's weak financial structure and its inability to secure contracts from others which ultimately caused the failure of the venture. The fact that the technology was allegedly experimental and unproven had little to do with the company's collapse. It was not faulty technology which caused the failure of the venture but rather economic factors. Appellants have not pointed to evidence in the record which would support their allegation that the proximate cause of their loss was the failure of the technology to work.

We conclude on this record that appellants have failed to produce evidence below to show that the alleged misrepresentations or omission proximately caused their damages. Summary judgment as to Count 1 of the amended complaint was therefore appropriately entered by the district court in favor of appellees on the alternative ground that appellants had failed to prove loss causation.**10**

IV

Count 3 of the amended complaint is brought under § 12(1) of the 1933 Act. Appellants argue that appellees violated this statute by not registering the Equipment Bonds. It is alleged in Count 3 that "[i]n the event that interest on the Equipment Bonds are [sic] deemed to be subject to Federal income taxation, the Equipment Bonds were required to be, but were not, registered pursuant to Section 5 of the 1933 Act."

The district court dismissed Count 3 on the ground that the issue

_____

**10** Loss causation was not an element of a claim asserted in 1995 under § 12(2). <u>Caviness v. Derand Resources Corp.</u>, 983 F.2d 1295, 1305 (4th Cir. 1993).

16

was not ripe for determination and that therefore no case and controversy had been presented by that claim. We agree.

Rather than asserting in the amended complaint that the interest on the Equipment Bonds was in fact taxable, appellants instead alleged that if it be later "deemed" that such interest was subject to federal income taxation, then the Equipment Bonds "were required to be" registered. Not only are the allegations of Count 3 based on a hypothetical occurrence, but also appellants have not produced any evidence indicating that the interest in question was indeed subject to federal taxation.

Article III of the Constitution limits the "judicial power of the United States to the resolution of `cases' and `controversies.'" <u>Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 471 (1982). An allegation of a possible future injury does not satisfy the requirements of Article III of the Constitution. <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 158 (1990). Dismissal for lack of ripeness is appropriate where nothing in the record shows that appellants have suffered any injury thus far and the future effect of the law relied upon remains wholly speculative. <u>Socialist Labor Party v. Gilligan</u>, 406 U.S. 583, 589 (1972).

Here, it is apparent that no case and controversy is presented by Count 3, which is based on a hypothetical claim not ripe for adjudication. We therefore conclude that the district court properly dismissed Count 3 of the amended complaint.[11]

V

Relying on Rule 56(f), F.R.Civ.P., appellants argue that they were denied an adequate opportunity to undertake discovery to support

_____

[11] Appellees further argue that the County, the Board, Cashwell and their attorneys owed no affirmative duty of disclosure under Rule 10b-5 and that these defendants are not statutory sellers under § 12(2) of the 1933 Act. In view of our determination that for other reasons summary judgment was properly entered by the district court in favor of all defendants as to Counts 1 and 2 of the amended complaint, it is not necessary to address these alternative arguments.

17

their opposition to appellees' dispositive motions. Rule 56(f) provides as follows:

> <u>When Affidavits are Unavailable</u>. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Although dispositive motions were filed at an early stage of the case, much discovery had been undertaken by the appellants before a hearing was held by the district court on the motions. At the time of the filing of their amended complaint on May 22, 1995, appellants had propounded interrogatories and requests for the production of documents. Most of the appellees responded to this discovery, and a large number of documents were produced.

After various appellees had filed dispositive motions, appellants, on July 11, 1995, filed a motion asking the Court to hold a pretrial conference concerning the timing of summary adjudication under Rule 56. <u>Inter alia</u>, appellants asserted that they had not yet had a reasonable opportunity for discovery. In a Memorandum Opinion entered on July 27, 1995, the district court denied that motion, noting that appellees had a right "to test swiftly the legal soundness of the charges made against them." Appellants were specifically put on notice that the court would consider the pending dispositive motions "beyond the bare four corners of their Amended Complaint." The court instructed appellants that, if they determined that a complete response to appellees' motions would be impossible without further discovery, they should submit appropriate affidavits to that effect pursuant to Rule 56(f).

Thereafter, on August 25, 1995, appellants filed an opposition to appellees' pending dispositive motion together with affidavits. Some sixty exhibits were submitted. One of the affidavits requested that counsel be permitted to undertake further discovery pursuant to Rule 56(f). However, that affidavit did not identify by name any expert, nor did it indicate the substance of any expert's opinion to be submitted

18

by way of affidavit. On November 9, 1995, a hearing was held on all pending motions to dismiss or for summary judgment. Some six days later, appellants filed a supplemental affidavit pursuant to Rule 56(f). In that affidavit, counsel did identify certain experts and indicated counsel's belief that these experts would render opinions favorable to appellants if a continuance were granted and if further discovery were permitted. No such further period of discovery was allowed by the district judge. The Court's Memorandum Opinion granting defendants' motions for summary judgment was entered on December 7, 1995. Appellants argue that the district court erred in denying their request for a continuance pursuant to Rule 56(f).

Denial of a Rule 56(f) request is reviewed under an abuse of discretion standard. Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995); Strag v. Board of Trustees, 55 F.3d 943, 953 (4th Cir. 1995). We conclude that under the circumstances here, the district judge did not abuse his discretion in denying appellants' request for a continuance so that further discovery could be undertaken.

It was after the hearing had been held on defendants' motions for summary judgment that appellants asked that the case be continued so that their identified experts could visit the site of the Facility and finalize their opinions. Appellants had been warned by the court's ruling of July 27, 1995 that they should prepare appropriate responses to appellees' dispositive motions, including appropriate affidavits. Nevertheless, no affidavit of any expert was submitted, and no expert was even identified when, a month later in August of 1995, appellants filed their opposition to appellees' motions for summary judgment together with supporting papers. The hearing on the motions was held some two and one-half months later, and it was after that hearing that appellants requested a continuance so that their experts could complete their investigations. Appellants have not explained why necessary investigations by their experts could not have been completed many months earlier so that appropriate affidavits of their experts could have been submitted before the hearing. The adverse party opposing a motion for summary judgment must under Rule 56(c) file a responding affidavit "prior to the day of hearing. . . ."

In view of these circumstances, we conclude that the district court did not abuse its discretion in declining to permit appellants to under-

19

take further discovery pursuant to Rule 56(f) before ruling on appellees' motions for summary judgment.

VI

For the foregoing reasons, we affirm the judgments entered below.**12**

AFFIRMED

MURNAGHAN, Circuit Judge, dissenting:

I respectfully dissent in part. I disagree with Part II of the majority's opinion, which affirms the district court's grant of summary judgment to all of the Appellees on Counts 1 and 2, the Rule 10b-5 and § 12(2) claims, on the ground that the Appellees made no material misrepresentations or omissions in the Offering Statement for the Equipment Bonds. The majority's opinion relies on the "bespeaks caution" doctrine and holds that cautionary language in the Offering Statement renders immaterial the Appellees' representation that the technology was proven. The majority opinion, however, erroneously applies the bespeaks caution doctrine.

I.

Rule 10b-5, promulgated under the Securities Exchange Act of 1934, and § 12(2) of the Securities Act of 1933 both require the plaintiff to prove that the defendant made an untrue statement of material fact or omitted a material fact necessary to make the statements true. 17 C.F.R. § 240.10b-5(b) (1996); 15 U.S.C.A. § 77l(2) (West 1981). "Materiality" for purposes of the securities laws is a "fact-specific inquiry" that "depends on the significance the reasonable investor would place on the withheld or misrepresented information." Basic Inc. v. Levinson, 485 U.S. 224, 240 (1988). The plaintiff must demonstrate that a "substantial likelihood" exists that disclosure of the true facts "would have been viewed by the reasonable investor as having

_____

**12** We are further satisfied that the district court acted within its discretion in dismissing without prejudice the pendent state law claims asserted in Counts 4 through 16 of the amended complaint. See 28 U.S.C. § 1367(c)(3).

20

significantly altered the `total mix' of information made available."
TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976).
Statements of fact and statements of opinion can both be material.
However, "[m]isstatements or omissions regarding actual <u>past</u> or
<u>present</u> facts are far more likely to be actionable than statements
regarding projections of <u>future</u> performance." Malone v. Microdyne
Corp., 26 F.3d 471, 479 (4th Cir. 1994).

In the instant case, the Feasibility Statement attached to the Offer-
ing Statement represented that the technology employed in the Facil-
ity was "proven" and was being used in "existing operational
facilities." The Appellants contend, however, and provide supporting
evidence to prove, that the technology was, in fact, experimental and
unproven.

In support of their motions for summary judgment, the Appellees
submitted an expert's affidavit which stated that, in the expert's opin-
ion, the technology was proven. Specifically, the affidavit stated that
"anaerobic composting was not, as of 1993, an `experimental' tech-
nology as that term is used and understood in the industry."

In opposition to the Appellees' motions, however, the Appellants
submitted a report, prepared by the County's expert, entitled "Organic
Waste Systems" (the "OWS Report"). The OWS Report contradicts
key representations of the Offering Statement regarding the Facility's
"anaerobic digester co-composting" equipment. In particular, the
OWS Report states that "[n]one of the existing technologies [as of
1993] were actually proven over a long period of time and no long-
term reliable investment or operating costs were available." In addi-
tion, the OWS Report states that the "technology of dry anaerobic
digestion was an emerging technology at the time of selection" and
that the development in the United States had been "limited to some
small pilot-scale experiences."

The majority correctly points out that the OWS Report also con-
tains passages that support the Appellees' argument that the technol-
ogy in question was proven. However, we have held that on summary
judgment the nonmoving party is entitled:

> to have the credibility of his evidence as forecast assumed,
> his version of all that is in dispute accepted, all internal con-

21

flicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence so considered.

Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). In the instant case, the Appellants at least raised a genuine issue of fact as to whether the statements that they relied upon misrepresented the nature of the technology in the proposed investment.

The Appellants also adequately established that a reasonable investor likely would have considered this information "material." Experimental technology generally has a greater risk of failure than proven technology. More importantly, the success of the technology in the instant case bore directly on the risk of the investment. The sole source of revenues for repayment of the Equipment Bonds was the payments that VBFC would receive from the County under the Operations Contract. VBFC had no other significant sources of revenue or assets. However, the County would only pay VBFC under the Operations Contract if the VBFC successfully processed the trash in the Facility. Thus, if the technology failed, so would the revenues for repayment of the Equipment Bonds. A substantial likelihood exists that a prospective investor would have viewed the "total mix" of information to have been significantly altered if the investor knew that the technology was experimental and had not been proven. TSC Industries, Inc., 426 U.S. at 449.

Contrary to the majority's reasoning in Part II of its opinion, the "cautionary statements" in the Offering Statement do not render the Appellees' misrepresentations immaterial. The bespeaks caution doctrine provides that certain misrepresentations in offering documents do not establish securities fraud liability when they are accompanied by meaningful warnings that clearly "bespeak caution." In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 364 (3d Cir. 1993), cert. denied sub nom. Gollomp v. Trump, 510 U.S. 1178 (1994). As the Third Circuit stated, "`bespeaks caution' is essentially shorthand for the well-established principle that a statement or omission must be considered in context, so that accompanying statements may render it immaterial as a matter of law." Id. Courts apply the narrow, fact-intensive bespeaks caution defense on a case-by-case basis. See, e.g.,

22

Harden v. Raffensperger, Hughes & Co., 65 F.3d 1392, 1404 (7th Cir. 1995); Rubinstein v. Collins, 20 F.3d 160, 167-68 (5th Cir. 1994); Trump, 7 F.3d at 371.

However, the bespeaks caution doctrine only applies to alleged misrepresentations regarding "soft," forward-looking statements, such as forecasts, opinions, and projections. For example, in Trump, 7 F.3d at 369-71, the Third Circuit held that an allegedly false statement that the issuer "believed" that it would generate sufficient funds in the future to repay the principal and interest on the bonds at issue was not actionable in view of disclosures "bespeaking" caution about the prediction. The Trump court held that forward-looking statements will not form the basis for a securities fraud claim if those statements are accompanied by meaningful cautionary statements. Id. at 371. The Fifth Circuit similarly has held that the bespeaks caution doctrine addresses "situations in which optimistic projections are coupled with cautionary language." See Rubinstein, 20 F.3d at 167 (emphasis added). See also Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1040 (6th Cir. 1991) ("Economic projections are not actionable if they bespeak caution."); In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1413 (9th Cir. 1994) (holding that the bespeaks caution doctrine applies when the defendants' forward-looking representations contain sufficient cautionary language), cert. denied sub nom. Miller v. Pezzani, 116 S.Ct. 185 (1995).

The bespeaks caution doctrine does not apply to misrepresentations regarding known, historical facts. The Fifth Circuit, for example, stated that "the inclusion of general cautionary language regarding a prediction would not excuse the alleged failure to reveal known material, adverse facts." Rubinstein, 20 F.3d at 171. The Seventh Circuit also has held that the bespeaks caution doctrine does not, as a matter of law, render misrepresentations of "hard" fact immaterial. See Harden, 65 F.3d at 1405-06. The First Circuit similarly has explained that the bespeaks caution doctrine cannot render a false statement of present fact immaterial as a matter of law. See Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1213 (1st Cir. 1996).

A district court similarly held that the bespeaks caution doctrine does not justify dismissal of a complaint where a plaintiff contends that the defendants concealed or misrepresented current events and

23

business conditions. See J/H Real Estate, Inc. v. Abramson, 901 F.Supp. 952, 956 (E.D. Pa. 1995). That court held that the "doctrine applies only where forecasts or projections are accompanied by sufficient cautionary language. In other words, the misleading statements must be `forward-looking' before the `bespeaks caution' doctrine can be invoked." Id. (internal citations omitted).

The bespeaks caution doctrine should not apply to the alleged misrepresentations in the instant case. The Appellants premise liability on the Appellees' misrepresentation of current and existing facts regarding the experimental nature of the technology. The Feasibility Study represented that the technology employed in the Facility was "proven" and used in "existing operational facilities," and the Appellants have raised at least a genuine issue of fact that the technology was not proven and had only been used in small, pilot-scale facilities. Unlike the cases that the district court and the majority opinion cite, the instant case does not involve predictions about future events. Rather, it involves misrepresentations about known, historical facts. "Proven" describes an established fact, not a forward-looking projection. Thus, since the Appellants sufficiently proved, for purposes of summary judgment, that the Appellees misrepresented and hid present facts that would have allowed the Appellants to make an informed judgment as to the extent of the risk, the surrounding cautionary language could not have rendered the statements immaterial as a matter of law. The inclusion of such cautionary language regarding predictions of the Facility's future success does not excuse the Appellees' alleged misrepresentation of current and existing facts regarding the nature of the technology.

Therefore, I think that the district court erred in granting summary judgment to all of the Appellees on Counts 1 and 2, the Rule 10b-5 and § 12(2) claims, on the ground that the Appellees did not make a material misrepresentation or omission.

II.

I do, however, agree with Part III of the majority's opinion, which affirms the district court's grant of summary judgment to all of the Appellees on the Rule 10b-5 claim on the additional ground that the Appellants failed to demonstrate loss causation. Thus, I would also

24

affirm the district court's grant of summary judgment to all of the Appellees on Count 1, the Rule 10b-5 claim, but I would do so only on the ground that the Appellants failed to establish loss causation.

III.

As the majority opinion notes, however, loss causation was not an element of a claim under § 12(2) at the time that the Appellants commenced the instant suit. Since then, Congress has amended § 12(2) to require proof of loss causation. See 15 U.S.C.A. § 77l(b) (West Supp. 1996). However, the amendment does not apply to suits, such as the instant one, commenced before December 22, 1995. Therefore, the Appellants' failure to demonstrate loss causation is not fatal to their § 12(2) claim.

The district court properly granted summary judgment to the County and the Board on the § 12(2) claim on the ground that they are not statutory sellers of securities under § 12(2). Section 12(2) imposes liability on "[a]ny person" who "offers or sells a security" by means of a prospectus that includes a material misrepresentation or omission. 15 U.S.C.A. § 77l(2) (West 1981). Thus, § 12(2) limits liability to those who "offer or sell" securities.

In Pinter v. Dahl, 486 U.S. 622, 641-47 (1988), the Supreme Court addressed the scope of "offer or sell."* The Supreme Court held that an individual who passes title in a security to a buyer for value and an individual who engages in solicitation both qualify as one who "offers or sells." Id. The district court in the instant case correctly found that the County and the Board did not "offer or sell" the Equipment Bonds because they neither solicited nor passed title to the Appellants. The Appellants failed to establish any contact between themselves and the County or the Board prior to the sale. Thus, I would

_____

* The Supreme Court actually decided Pinter under § 12(1) of the Securities Act of 1933, which also limits liability to those who "offer or sell" securities. See 15 U.S.C.A. § 77l(1) (West 1981). Pinter's reasoning, however, applies with equal force to cases under § 12(2). See Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 49 (2d Cir. 1991); In re RAC Mortgage Inv. Corp. Sec. Litig., 765 F.Supp. 860, 865 (D. Md. 1991).

25

affirm the district court's grant of summary judgment to the County and the Board on the § 12(2) claim.

However, as stated above, I think that the district court erred in granting summary judgment to the remaining Appellees on the § 12(2) claim on the ground that the Appellees did not make a material misrepresentation. Since the bespeaks caution doctrine does not properly apply to the instant case, I would reverse the district court's grant of summary judgment to the remaining Appellees on Count 2, the § 12(2) claim. Since I would reverse the district court's dismissal of the federal § 12(2) claim, I would also reverse the district court's dismissal of the pendent state law claims asserted in Counts 4 through 16 of the amended complaint.

26