**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CELLCO PARTNERSHIP, d/b/a Bell
Atlantic Mobile,
<u>Plaintiff-Appellant,</u>

v.

EDWIN RUSSELL, Chairperson; BILL
EDWARDS, GROVER LEE BRADSHAW;

No. 98-2123

ROBERT FORGA; JACK RICE, as and
constituting the Haywood County
Board of Commissioners; KRIS
BOYD, as County Planner; BRUCE
CRAWFORD, as Building Inspector,
HAYWOOD COUNTY,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CA-98-23-1-T)

Argued: April 7, 1999

Decided: July 30, 1999

Before WIDENER, MURNAGHAN, and WILKINS, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Mark Tuller, CELLCO PARTNERSHIP, Bed-
minster, New Jersey, for Appellant. Alison Raney Bost, WOMBLE,

CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellees. **ON BRIEF:** Alison Brotman, J. Vann Vogel, CELLCO PARTNERSHIP, Bedminster, New Jersey; R. Hewitt Pate, John S. Martin, HUNTON & WILLIAMS, Richmond, Virginia; Christopher G. Browning, Jr., HUNTON & WILLIAMS, Raleigh, North Carolina; Ruth B. Rosenberg, NIXON, HARGRAVE, DEVANS & DOYLE, L.L.P., Washington, D.C., for Appellant. James R. Morgan, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina; Larry T. Reida, KILLIAN, KERSTEN & PATTON, P.A., Waynesville, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Cellco Partnership, d/b/a Bell Atlantic Mobile ("BAM"), appeals from the district court's grant of summary judgment to Haywood County, North Carolina and the individual members of the county's Board of Commissioners ("County"). BAM contends that the county's moratorium on the issuing of permits to construct wireless communication towers throughout the county violated the Telecommunications Act of 1996 (TCA) because it had the effect of prohibiting wireless communications service in the county. For its part, the county contends that the moratorium was valid, and was reasonably necessary to permit it to study the effect of erecting the towers on the safety of county residents and the aesthetic aspects of county land. Finding that BAM's claims against the moratorium are moot and its claims against the ordinance are not ripe, we vacate and remand the case to the district court with instructions to dismiss.

I.

Haywood County, a mountainous area in western North Carolina, is known for its beautiful natural landscape.[1] Currently, it is home to three wireless towers like those at issue here. BAM constructed two of those towers in 1997, and intended to apply for permission to construct four more. At the time BAM constructed the towers, the county had no zoning restrictions.

Aware that BAM desired to construct several more towers in the county, the Haywood County Board of Commissioners enacted a moratorium on June 16, 1997. As a result, no permits could issue to developers seeking to construct wireless telecommunications towers. By its terms, the moratorium was effective for the shorter of a one year period or the time it took to enact a zoning plan.

County officials focused their attention on enacting a zoning plan that would balance the needs of county residents with those of wireless telecommunications services providers. To that end, the county held several meetings. BAM not only was allowed to participate in those meetings, but also was asked to provide technical assistance to county leaders throughout the summer so that the county might better understand the issues involved.

BAM applied for building permits to build four new towers in late January 1998. At that time, the ordinance had not yet been enacted. Because the moratorium was still in effect, county planner Kris Boyd and building inspector Bruce Crawford told BAM's representative, Jane McNairy, that no permits would be issued. Instead, they stated, the county would keep the applications and review them under the new ordinance when it became effective.

On February 6, 1998, less than two weeks later, BAM filed suit in district court challenging the moratorium's validity under the Telecommunications Act of 1996, 47 U.S.C. § 332 (1996) ("TCA"). BAM attempted to avail itself of an expedited review provision of the TCA

_____

[1] Indeed, the county notes that travel and tourism expenditures in the County amounted to $54.4 million in 1988, a 133 percent increase over 1980.

permitting suits to be filed within thirty days of a denial of or failure to act on an application that violates the TCA. See 47 U.S.C. § 332(c)(7)(B)(v).

On February 23, 1998, slightly more than two weeks after BAM filed suit, the county enacted its zoning ordinance ("ordinance"). The ordinance is a comprehensive zoning plan designed to regulate the location and structure of wireless telecommunications towers. The ordinance is designed not only to reflect the safety concerns of county officials, but also to preserve to the extent possible the beauty of the natural landscape in the county. The TCA specifically leaves to local governments decisions regarding "placement, construction and modification" of the wireless telecommunication towers, subject to some exceptions. 47 U.S.C. § 332(c)(7)(A).

BAM amended its complaint to challenge the new ordinance as well. It contended that, like the moratorium, the ordinance had the "effect of prohibiting wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). BAM particularly noted provisions of the ordinance that tend to make production and maintenance of the towers more costly and difficult, and increase the possibility that the towers will need substantial alterations in the future.

In the meantime, the county began to analyze BAM's applications under the new ordinance. Indeed, Boyd wrote BAM and requested additional information regarding the application. BAM never complied with -- or even responded to -- the county's request. Rather, it maintained that the ordinance violated the TCA.

After hearing argument, the district court granted summary judgment to the county with respect to BAM's challenge to the moratorium, and dismissed its challenge to the ordinance as unripe. BAM now appeals.

II.

BAM first contends that the moratorium violated the TCA by effectively prohibiting the provision of wireless services. It equates the county's delay in approving the permits to a denial.[2] Thus, it con-

_____

[2] BAM also contends that the county denied its permit applications and that the moratorium unreasonably delayed the county's processing of its applications. We reject those arguments for the reasons stated below.

4

tends that summary judgment was improperly granted to the county. Decisions to grant motions of summary judgment are reviewed <u>de novo</u>. <u>See Henson v. Liggett Grp., Inc.</u>, 61 F.3d 270, 274 (4th Cir. 1995).

Although the TCA leaves most zoning issues to the states and localities, it does impose some limitations on those governments' abilities to deny applications for the provision of wireless services. One of the restrictions that the TCA places on a state or local government's authority is that government action may not "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). We have understood this language to apply to general bans on the provision of services. <u>See AT&T Wireless PCS v. City Council of Virginia Beach</u>, 155 F.3d 423, 428 (4th Cir. 1998). BAM contends that the moratorium was such a general ban.

However, we need not reach that question. Because the moratorium is no longer in effect, BAM's challenge to it is moot. We are charged with adjudicating cases and controversies only, and have no jurisdiction to hear cases in which there no longer is a live controversy. <u>See Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477 (1990). A controversy must be live not only at the time the complaint is filed, but also throughout the litigation at both the trial and appellate levels. <u>See id.</u>; Bahnmiller v. Derwinski, 923 F.2d 1085, 1088 (4th Cir. 1991). Claims unable to meet that requirement generally are dismissed. <u>See Maryland Highway Contractors v. State of Maryland</u>, 933 F.2d 1246, 1250 (4th Cir. 1991).

Two weeks after BAM filed the instant action, the county passed the new ordinance. By its terms, the moratorium expired in favor of that ordinance. The new ordinance now governs the application process. Indeed, the county still awaits a response from BAM to its requests for more information. Because the moratorium no longer bars approval of BAM's permit applications, BAM's challenge to the moratorium is no longer a live controversy.

Moreover, while it is a close question, BAM's claim is not one that is "capable of repetition but evading review." <u>See Southern Pac. Terminal Co. v. ICC</u>, 219 U.S. 498, 514-15 (1911). A litigant establishes that a matter is "capable of repetition but evading review," and thus

5

not moot, if it demonstrates that: (1) the matter is of a type that will not last long enough to afford an opportunity for full litigation; and (2) there is a "reasonable expectation" that it will be subject to the same action in the future. Lewis, 494 U.S. at 481.

Because BAM's ability to meet the first part of the test depends on its likelihood of facing the moratorium again, we discuss the second part of the test first. BAM's "reasonable expectation" that the moratorium will be reinstituted, and thus its ability to show that the moratorium is too short to afford full judicial review, rests on the assumption that ordinance is likely to be invalidated. That is an assumption that we are not prepared to make on this record. There is no reason to presuppose that any section of the new ordinance will be declared invalid. Congress specifically reaffirmed the authority of state and local governments to regulate the "placement, construction and modification of personal wireless services." 47 U.S.C. § 332(c)(7)(A).

The county enacted its ordinance pursuant to the TCA's grant of power. The ordinance, at least on its face, does not violate the TCA. The ordinance does not limit the number of towers that can be built in Haywood County, or even where those towers can be built. It merely makes the construction and maintenance of the towers more difficult than before, when there were no regulations at all. Since it has never been applied, we do not know whether the new ordinance will prohibit, or have the effect of prohibiting, the provision of wireless services. See section III, infra . Because BAM cannot establish that it has a reasonable expectation of being subjected to another moratorium, the moratorium's short duration does not make BAM's claims ones that are "capable of repetition but evading review."[3] Southern Pac. Terminal Co., 219 U.S. at 514-15. As a result, BAM's claims are moot.

_____

[3] The new moratorium would be effective for only six months, which is approximately 181-184 days. Such a short period of time almost certainly is insufficient to provide full appellate review for the litigants. Cf. Roe v. Wade, 410 U.S. 113, 125 (1973) (stating that the "266-day human gestation period" is not long enough to provide a litigant with full appellate review).

6

III.

BAM's challenge to the ordinance does not fare any better. BAM challenges several provisions of the ordinance as violating the TCA. However, that challenge fails because it is unripe.

As stated above, we do not have the power to hear matters that are not "cases and controversies." Lewis, 494 U.S. at 477. Federal courts must always be mindful of their obligation to avoid rendering advisory opinions. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937). While we need not necessarily wait until a threatened injury actually materializes, there must be a sufficiently concrete controversy to justify our jurisdiction. See Arch Mineral Corp. v. Babbitt, 104 F.3d 660, 665 (4th Cir. 1997). More specifically, we have held that where the plaintiff has not yet been injured by the governmental act about which it complains, review is precluded by the ripeness doctrine. See Gasner v. Board of Super's of County of Dinwiddie, Va., 103 F.3d 351, 361 (4th Cir. 1996).

In determining whether a claim is ripe for adjudication, we generally consider two major factors: (1) the extent to which the claim is fit for adjudication; and (2) the hardship to the parties. See Abbot Labs. v. Gardner, 387 U.S. 136, 149 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 105 (1977); Arch Mineral Corp., 104 F.3d at 665. We determine whether a claim is fit for adjudication by examining whether the question presented is a "purely legal one[ ] and whether the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203, 208 (4th Cir. 1992).

Here, there is some future uncertainty with respect to the county's response to BAM's applications. Initially, we note two things. First, as stated above, nothing in the TCA expressly bars any of the provisions of the ordinance. BAM seems to admit as much, as it does not (and cannot) argue that the county is expressly prohibited from enacting the ordinance or from placing restrictions on the height or other aspects of the towers. Rather, it argues that the provisions of the ordinance tend to make the construction and maintenance of the towers

7

so costly and burdensome that it either prohibits or has the effect of prohibiting the provision of wireless services in the county.

Second, the county has not denied or threatened to deny BAM's applications. The reason that BAM's applications have not been acted upon is that, to date, BAM has not complied with the county's request for additional information. Its permit applications remain incomplete and in the county's possession. The county has patiently retained the applications and has indicated that it considers them pending, not abandoned or denied.

Bearing those facts in mind, we conclude that further factual development is needed to determine whether the county's measures prohibit or have the effect of prohibiting the provision of wireless services. The ordinance has not been applied to any applications. Although BAM asserts that it does not intend to submit an application that complies with the ordinance's requirements, we are unable to determine how the county will respond. As stated above, variances, while intended to be rare, may be granted under certain circumstances.

For example, BAM, which appears convinced that the only viable way to service towers is to place climbing devices on them, may well be able to convince the county of that view and obtain a variance from the general prohibition of those devices. Alternatively, some other wireless service provider may not find that the use of cranes significantly interferes with its ability to service its towers. In either event, the ordinance would not have had the "effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B) (i)(II).

Another example is the county's discretionary authority under the ordinance to require wireless services providers to comply with laws enacted after they have constructed their towers. Because the ordinance has never been applied to any wireless services provider, we do not have any insight into how the county might use its discretion. It may require compliance with minor laws but exempt older towers from laws that would require major renovations and expense. It may not. Without any track record to guide us, we cannot be sure whether a particular exercise of that authority violates the TCA. The wiser

8

course, then, is to allow the county the opportunity to act on the applications.

Moreover, BAM would not be subject to great hardship if we declined to hear its claim now. Its only hardship would be to respond to the county's requests for additional information regarding the construction and placement of its proposed towers. If BAM were to do so, perhaps we could glean some insight into what the county might do. On the other hand, the county would be harmed if we decided the case now. A decision on the merits of the ordinance before it is applied would prematurely deprive the county of the opportunity to regulate the construction and placement of towers within its borders in a manner consistent with the TCA.

The cases BAM cites do not persuade us, either. For example, in McKenzie v. City of White Hall, 112 F.3d 313, 315 (8th Cir. 1997), the city essentially attempted to extort land from the plaintiffs by refusing to grant them building permits until they capitulated to the city's requests. See id. at 315-16. Thus, the city's interest in the plaintiffs' land and threats to frustrate the plaintiffs' plans for their land sufficiently diminished the value in the plaintiffs' land to create a case or controversy under Article III. See id. at 316. Another case BAM cites, Santa Rosa Band of Indians v. Kings County, 532 F.2d 655, 657 n.1 (9th Cir. 1975), limited the rule to zoning ordinances affecting residential areas. See id. By contrast, neither inappropriate behavior on the county's part nor a residential zoning ordinance is at issue here. What we are left with, then, is an "allegation of possible future injury [that] does not satisfy the requirements of Article III of the Constitution." Gasner, 103 F.3d at 361. Therefore, the district court properly dismissed BAM's claims against the ordinance as unripe.

Because BAM's claims as to the moratorium are moot and its claims as to the ordinance are not ripe, we remand the claim to the district court with the instructions to dismiss.

VACATED AND REMANDED

9